ORAL ARGUMENT NOT YET SCHEDULED

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

No. 12-7122

_____

AYANNA BLUE,

*Appellant*,

v.

DISTRICT OF COLUMBIA, *et al.*,

*Appellees*.

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

**BRIEF FOR APPELLANT AYANNA BLUE**

_____

Scott D. Gilbert
Natalie A. Baughman
**GILBERT LLP**
1100 New York Ave. NW, Suite 700
Washington, DC 20005
Telephone:  (202) 772-2200
Facsimile:  (202) 772-3300
gilberts@gotofirm.com
baughmann@gotofirm.com

*Attorneys for Appellant Ayanna Blue*

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

In compliance with this Court's November 27, 2012 Order and Circuit Rules 12(c) and 28(a)(1), Appellant Ayanna Blue certifies as follows:

**(A)     Parties and Amici:**  Ayanna Blue was the plaintiff in the District Court and is the Appellant here.  The District of Columbia (the "District"), the District of Columbia Public Schools ("DCPS"), former DCPS Chancellor Michelle Rhee, and former DCPS teacher Robert Weismiller were defendants in the District Court.  The District of Columbia is the only Appellee here.

No intervenors or *amici* appeared before the District Court, and Appellant is not aware of any here.

**(B)     Rulings Under Review:**  The rulings under review are an order by Judge James E. Boasberg dismissing all of Ms. Blue's claims against the District of Columbia, DCPS, and former DCPS Chancellor Michelle Rhee (District Court Docket No. 31) and the accompanying memorandum opinion (District Court Docket No. 32), both dated March 8, 2012.  The memorandum opinion is reported at 850 F. Supp. 2d 16 (D.D.C. 2012).

Following these rulings, Mr. Weismiller was the only remaining defendant. On October 26, 2012, the District Court entered an order dismissing him in accordance with a settlement he had reached with Ms. Blue.  Thus, as of the District Court's October 26, 2012 order, all claims of all parties had been

dismissed.

**(C)    Related Cases:**  This case was never previously before this Court or any other court.  There are no related cases of which counsel is aware.

# **TABLE OF CONTENTS**

TABLE OF CONTENTS.................................................................................iii

TABLE OF AUTHORITIES .........................................................................v

STATEMENT OF JURISDICTION...............................................................1

STATEMENT OF THE ISSUES....................................................................1

STATUTES ...................................................................................................3

STATEMENT OF THE CASE........................................................................3

STATEMENT OF FACTS .............................................................................4

    A.    Mr. Weismiller's Sexual Abuse of Ms. Blue .......................................4

    B.    The District's Response to Mr. Weismiller's Sexual Abuse ................6

    C.    The District Court's Decision ...............................................................6

STANDARD OF REVIEW .............................................................................8

SUMMARY OF THE ARGUMENT ..............................................................9

ARGUMENT .................................................................................................11

    A.    The District Court Erred in Dismissing Ms. Blue's Claim
           Alleging Municipal Liability Pursuant to 42 U.S.C. § 1983 .............11

        1.    The District Court Erred in Dismissing Ms. Blue's
              § 1983 Claim for Violation of Her Substantive
              Due Process Right to Bodily Integrity ......................................13

              a)    The District's Failure to Investigate
                   Mr. Weismiller's Background ........................................14

              b)    The District's Failure to Fire or Reprimand
                   Mr. Weismiller.................................................................17

    B.    The District Court Erred in Dismissing Ms. Blue's Claim
           Pursuant to 20 U.S.C. § 1681 ..........................................................20

        1.    An "Appropriate Person" Was Aware of Mr. Weismiller's
              Misconduct.................................................................................21

        2.    The District Had Actual Knowledge of Mr. Weismiller's
              Misconduct.................................................................................22

        3.    The District Acted With Deliberate Indifference by Failing
              to Address Adequately Mr. Weismiller's Misconduct ............23

C.     The District Court Erred in Dismissing Ms. Blue's State Law
       Claims for Failure to Give Timely Notice under
       D.C. Code § 12-309...............................................................................24

CONCLUSION .......................................................................................................29

STATUTORY ADDENDUM ................................................................................30

# TABLE OF AUTHORITIES[1]

**Page(s)**

**CASES**

*Allen v. District of Columbia,*
  533 A.2d 1259 (D.C. 1987) ..............................................................26

*Andrews v. Fowler,*
  98 F.3d 1069 (8th Cir. 1996) ...........................................................16

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009)............................................................................9

*Atchinson v. District of Columbia,*
  73 F.3d 418 (D.C. Cir. 1996).......................................................8, 16

*\*Baker v. District of Columbia,*
  326 F.3d 1302 (D.C. Cir. 2003).............................................12, 13, 15

*\*Bd. of Cnty. Comm'rs v. Brown,*
  520 U.S. 397 (1997)................................................................13, 15, 16

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007)............................................................................9

*Benavides v. Cnty. of Wilson,*
  955 F.2d 968 (5th Cir. 1992) ...........................................................16

*Bostic v. Smyrna Sch. Dist.,*
  418 F.3d 355 (3d Cir. 2005) ...............................................21, 22, 23

*\*Brown v. District of Columbia,*
  514 F.3d 1279 (D.C. Cir. 2008).......................................8, 12, 13, 16

*Collins v. City of Harker Heights*, 503 U.S. 115, 124 (1992) ................12

*Daskalea v. District of Columbia,*
  227 F.3d 433 (D.C. Cir. 2000)..........................................................12

---

[1] Authorities upon which we chiefly rely are marked with an asterisk.

*Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.*,
   526 U.S. 629 (1999)..............................................................................23

*Dawn L. v. Greater Johnstown Sch. Dist.*,
   586 F. Supp. 2d 332 (W.D. Pa. 2008)..................................................23

*Dellums v. Powell*,
   566 F.2d 216 (D.C. Cir. 1977)..............................................................26

*Doe ex rel. Doe v. Derby Bd. of Educ.*,
   451 F. Supp. 2d 438 (D. Conn. 2006)..................................................23

*Doe v. Sch. Bd.*,
   604 F.3d 1248 (11th Cir. 2010) .....................................................23, 24

*Doe v. Taylor Indep. Sch. Dist.*,
   15 F.3d 443 (5th Cir. 1994) ..................................................................13

*Escue v. N. Okla. Coll.*,
   450 F.3d 1146 (10th Cir. 2006) ............................................................22

*Franklin v. Gwinnett Cnty. Pub. Schs.*,
   503 U.S. 60 (1992)................................................................................21

*Fundiller v. City of Cooper City*,
   777 F.2d 1436, 1442 (11th Cir. 1985) .................................................18

*Gebser v. Lago Vista Indep. Sch. Dist.*,
   524 U.S. 274 (1998)........................................................................20, 21

*George v. Dade*,
   769 A.2d 760 (D.C. 2001) ....................................................................26

*Grandstaff v. City of Borger, Tex.*,
   767 F.2d 161 (5th Cir. 1985) ..........................................................17, 19

*Henry v. County of Shasta*,
   132 F.3d 512, 518-19 (9th Cir. 1997)........................................18, 19, 20

*Hurd v. District of Columbia*,
   106 A.2d 702 (D.C. 1954) ....................................................................28

*Jenkins v. District of Columbia*, 379 A.2d 1177, 1178 (D.C. 1977) ......................26

*Kinman v. Omaha Pub. Sch. Dist.*, 171 F.3d 607, 611 (8th Cir. 1999) ...................14

*Larez v. City of Los Angeles*,
    946 F.2d 630 (9th Cir. 1991) ..........................................................................19

*Mazloum v. District of Columbia Metro. Police Dept.*,
    522 F. Supp. 2d 24 (D.D.C. 2007).................................................................27

*McRorie v. Shimoda*,
    795 F.2d 780 (9th Cir. 1986) .....................................................................18, 19

*Mejia v. City of Sacramento*, 177 Fed. Appx. 661, 665 (9th Cir. 2006) ................20

*Monell v. Dep't of Soc. Servs.*,
    436 U.S. 658 (1978).........................................................................................12

*Murrell v. Sch. Dist. No. 1, Denver, Colo.*,
    186 F.3d 1238 (10th Cir. 1999) ......................................................................21

*Owens v. Haas*,
    601 F.2d 1242 (2d Cir. 1979) .........................................................................18

*Pitts v. District of Columbia*,
    391 A.2d 803 (D.C. 1978) ...............................................................................26

*Plamp v. Mitchell Sch. Dist. No. 17-2*,
    565 F.3d 450 (8th Cir. 2009) ..........................................................................21

*Rieser v. District of Columbia*,
    563 F.2d 462 (D.C. Cir. 1977).........................................................................26

*Sharma v. District of Columbia*,
    791 F. Supp. 2d 207 (D.D.C. 2011)..................................................................9

*Sperling v. Washington Metro. Area Transit Auth.*,
    542 F. Supp. 2d 76 (D.D.C. 2008)...................................................................26

*Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 727 (3d Cir. 1989).............13

*Vance v. Spencer Cnty. Pub. Sch. Dist.*,
    231 F.3d 253 (6th Cir. 2000) .....................................................................23, 24

*Warren v. District of Columbia*,
    353 F.3d 36 (D.C. Cir. 2004)..............................................................12, 13, 15

## STATUTES

*20 U.S.C. § 1681 ....................................................................2, 3, 7, 10, 20

28 U.S.C. § 1291 ..............................................................................1

28 U.S.C. § 1331 ..............................................................................1

28 U.S.C. § 1343(a)(3) ......................................................................1

28 U.S.C. § 1367(a) ..........................................................................1

*42 U.S.C. § 1983 ............................... 1, 2, 3, 7, 9, 10, 11, 12, 13, 14, 17, 18, 19, 20

*D.C. Code § 12-309 ..................................... 2, 3, 8, 11, 24, 25, 26,27, 28

## OTHER AUTHORITIES

Federal Rule of Civil Procedure 12(b)(6) ..............................................6, 8

Federal Rule of Civil Procedure 54(b) ....................................................4

## STATEMENT OF JURISDICTION

This Court has jurisdiction under 28 U.S.C. § 1291.  The District Court's March 8, 2012 decision dismissing the District of Columbia, DCPS, and former Chancellor Rhee became appealable on October 26, 2012, when the District Court dismissed the case against Mr. Weismiller, the only remaining defendant.[2]  Thus, as of October 26, 2012, the District Court had rendered final decisions on all claims of all parties.  On November 21, 2012, Ms. Blue timely appealed to this Court.

The District Court had jurisdiction of Ms. Blue's federal law claims by virtue of 28 U.S.C. §§ 1331 (federal question jurisdiction) and 1343(a)(3) (jurisdiction over civil rights claims).  The District Court had jurisdiction over Ms. Blue's state law claims by virtue of 28 U.S.C. § 1367(a) (supplemental jurisdiction when federal claims are alleged).

## STATEMENT OF THE ISSUES

1.     When a teacher sexually abuses a student, 42 U.S.C. § 1983 provides a cause of action for violation of that student's right to bodily integrity.  A municipality such as the District can be held liable for a teacher's abuse when a

---

[2] On January 11, 2013, the District moved to dismiss Ms. Blue's case for lack of appellate jurisdiction, arguing that Ms. Blue's dismissal of Mr. Weismiller without prejudice meant that there was no final order with respect to him.  For all of the reasons set forth in Ms. Blue's January 25, 2013 opposition, Ms. Blue respectfully disagrees.

municipal custom or practice caused the abuse. Is the District liable to Ms. Blue

under 42 U.S.C. § 1983 when it has a custom of hiring teachers without

investigating their backgrounds adequately, hired a teacher with a history of

sexually abusing students, assigned him to teach "emotionally disturbed" students

such as Ms. Blue, and failed to discipline him in any way upon learning of the

abuse?

  2. A municipality is liable under 20 U.S.C. § 1681 for a teacher's sexual

abuse of a student when an "appropriate official" has "actual knowledge" of the

abuse and is "deliberately indifferent" in responding to it. Is the District liable to

Ms. Blue under 20 U.S.C. § 1681 when at least two teachers, two classroom aides

and a clinical psychologist knew of her teacher's sexual abuse and did nothing to

stop it?

  3. D.C. Code § 12-309 requires a tort plaintiff to provide written notice

to the District of Columbia within six months of injury and prior to filing suit.

Certain documents, such as a police report, satisfy the statute when they provide

"actual notice" of a claim. The purpose of the law is to allow the District an

opportunity to investigate a claim before a plaintiff files suit. Did a detailed

investigative report completed by DCPS of Mr. Weismiller's sexual abuse provide

the District with adequate notice of Ms. Blue's claims?

## STATUTES

Ms. Blue has asserted against the District a violation of her substantive due process right to bodily integrity under 42 U.S.C. § 1983, and a claim for discrimination under 20 U.S.C. § 1681. Ms. Blue has also asserted against the District state law claims of negligent supervision, negligent hiring/retention, intentional infliction of emotional distress, and breach of fiduciary duty. Ms. Blue's compliance with D.C. Code § 12-309 is at issue with respect to those state law claims.

The pertinent statutory provisions are set forth in the Statutory Addendum at the end of this brief.

## STATEMENT OF THE CASE

On May 11, 2011, Ms. Blue sued the District, DCPS, and former DCPS Chancellor Rhee for their failure to protect her from sexual abuse by Mr. Weismiller. She alleged claims against the District for negligent supervision, negligent hiring/retention, and violation of 20 U.S.C. § 1681 *et seq.* She also alleged claims against the District and Mr. Weismiller for intentional infliction of emotional distress, breach of fiduciary duty, violation of her equal protection rights under 42 U.S.C. § 1983, and violation of her substantive due process right to bodily integrity under 42 U.S.C. § 1983.

Mr. Weismiller answered the complaint, and the District moved to dismiss

3

it.  On March 8, 2012, the District Court granted the District's motion.  Ms. Blue

moved for entry of final judgment under Federal Rule of Civil Procedure 54(b),

requesting that the District Court enter a final, appealable order against the District

while Ms. Blue litigated her claims against Mr. Weismiller.  On April 18, 2012, the

District Court denied the motion.  Ms. Blue proceeded against Mr. Weismiller and,

on October 26, 2012, reached a settlement with him.  That same day, the District

Court entered an order dismissing the case against him without prejudice.

On November 21, 2012, Ms. Blue filed a notice of appeal.  The District

moved to dismiss for lack of appellate jurisdiction, on the ground that Ms. Blue's

dismissal of Mr. Weismiller without prejudice was not a final judgment.  The

parties briefed the issue, and this Court ordered the issue decided by the panel

hearing the merits.

## STATEMENT OF FACTS

**A.**     **Mr. Weismiller's Sexual Abuse of Ms. Blue**

This lawsuit arises from the sexual abuse of Ms. Blue by Mr. Weismiller

while he was employed as a teacher by DCPS.  Joint Appendix ("App.") at 9, ¶ 1.

Ms. Blue is a special education student who attended the Transition Academy at

Shadd ("Shadd"), a public school in the District of Columbia for students who

have been identified by DCPS as "emotionally disturbed."  App. at 11, ¶ 13.

Ms. Blue was 18 years old at the time of the events described below.

Mr. Weismiller is a serial child molester. He has abused numerous middle-and high-school students in the Washington, D.C. area over a 35-year period.

- In the late-1970s, Mr. Weismiller initiated sexual relationships with two students at Gwynn Park High School in Prince George's County. App. at 12-13, ¶¶ 24-25.

- In the mid-1980s, Mr. Weismiller sexually assaulted two eighth-graders at Fred Lynn Middle School in Prince William County. App. at 13, ¶ 26. The eighth-grade victims sued Mr. Weismiller, and he was, upon information and belief, fired for these assaults. *Id.*

- According to the plaintiffs in that lawsuit, Mr. Weismiller also was fired from the Fairfax County Public Schools, where he taught in the late-1990s, when that school district learned of the assaults on the eighth-graders. App. at 13, ¶ 27.

The District has a custom of failing to conduct adequate background checks of potential employees. App. at 21, ¶ 82. Despite Mr. Weismiller's history of abuse, the District hired him and assigned him to teach emotionally disturbed students at Shadd. App. at 11, ¶¶ 13-14. Ms. Blue was a student in his class. *Id.* ¶ 15. After flirting with her for several months, Mr. Weismiller initiated a sexual relationship with her in fall 2008, which involved sexual encounters in his classroom, his car, and Ms. Blue's house over a six-month period. App. at 11-12, ¶¶ 15, 19-20. He impregnated Ms. Blue, who gave birth to a daughter in November 2009. App. at 12, ¶ 21. Ms. Blue, her daughter, and Mr. Weismiller took paternity tests in August 2010, and the results indicated a 99.99% probability that Mr. Weismiller is the baby's father. *Id.* ¶ 22. Thus, as a result of

5

Mr. Weismiller's abuse, Ms. Blue had a baby when she was still a teenager, before she was prepared to care for the child.  App. at 16, ¶ 41.

**B.     The District's Response to Mr. Weismiller's Sexual Abuse**

In May 2009, after learning that Ms. Blue was pregnant, the District began investigating Mr. Weismiller.  App. at 14, ¶ 29.  Every witness interviewed by the District admitted either seeing Ms. Blue and Mr. Weismiller alone together in his classroom or hearing rumors that the two were having a sexual relationship.  App. at 14-15, ¶¶ 31-36.  However, no one did anything to stop the sexual encounters.  App. at 9, ¶ 2.  The District has a custom of failing to punish misconduct by its employees.  App. at 21, ¶ 83.  Consistent with that custom, upon finishing its investigation, the District concluded that Mr. Weismiller had done nothing wrong.  App. at 15, ¶ 38.  Former Chancellor Rhee characterized the situation as "he said, she said."  App. at 16, ¶ 39.

**C.     The District Court's Decision**

Despite the allegations above, the District Court dismissed Ms. Blue's suit under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.  Specifically, the District Court dismissed DCPS and former Chancellor Rhee as parties; dismissed Ms. Blue's claims for a violation of her substantive due process right to bodily integrity, her equal protection right to be free from gender discrimination, and her equal protection right to be treated similarly to other

6

special education students, all brought under 42 U.S.C. § 1983; her claim for

education discrimination under 20 U.S.C. § 1681; and all of her state law claims.[3]

First, the District Court held that Ms. Blue "has not alleged sufficient facts"

of a District custom, policy, or practice to support her substantive due process

claim under 42 U.S.C. § 1983 for a violation of her right to bodily integrity.  App.

at 35.  Although Ms. Blue alleged that the District had a practice of failing to

investigate  the backgrounds of its teachers background before hiring them and for

condoning teacher-student abuse, App. at 21, ¶¶ 82-84, the District Court deemed

Ms. Blue's allegations deficient because she did not "identify any official District

policy on pre-hiring background checks . . . or allege how a district policymaker

was deliberately indifferent in adopting such a policy," and she did not allege that a

"final policymaker" decided to hire Mr. Weismiller despite his past abuse.  App. at

36, 37.  And although Ms. Blue alleged that the District also had a practice of

failing adequately to discipline teachers who had committed abuse, the District

Court deemed these allegations deficient because Ms. Blue did not plead who

made the decision not to terminate Mr. Weismiller and did not plead causation.

App. at 39-41.

Second, the District Court held that Ms. Blue failed to state a claim under

20 U.S.C. § 1681, which requires allegations of (1) "actual notice" (2) to an

---

[3] Ms. Blue is not appealing the District Court's dismissal of DCPS and former
Chancellor Rhee or her equal protection claims.

"appropriate person," and (3) "deliberate indifference" to the allegations.  App. at

46.  The District Court held that a pregnancy test taken at the school's request

during the relationship was insufficient to establish "actual knowledge," as were

interviews of teachers and staff because no one interviewed actually saw Mr.

Weismiller and Ms. Blue engaged in a sexual act.  App. at 46-48.  Further, the

District Court held that the teachers, staff, and "school personnel" that Ms. Blue

alleged knew of Mr. Weismiller's abuse as it was occurring were not "appropriate

persons."  App. at 46-47.  The District Court also held that Ms. Blue did not

demonstrate "deliberate indifference" because the District adequately investigated

Mr. Weismiller.  App. at 52-53.

Finally, the District Court dismissed Ms. Blue's state law claims for failure

to give notice under D.C. Code § 12-309.  The District Court determined that a

detailed, 51-page investigative report prepared by DCPS regarding the abuse failed

to satisfy the statute, even if it provided the District of actual notice of Ms. Blue's

claims.  App. at 53-57.

## STANDARD OF REVIEW

Dismissals of claims under Fed. R. Civ. P. 12(b)(6) are reviewed *de novo*.

*Atchinson v. District of Columbia*, 73 F.3d 418, 422 (D.C. Cir. 1996); *Brown v.*

*District of Columbia*, 514 F.3d 1279, 1283 (D.C. Cir. 2008).  To state a claim, a

complaint "need only plead enough facts to state a claim to relief that is plausible

8

on its face and to nudge his or her claims across the line from conceivable to plausible." *Sharma v. District of Columbia*, 791 F. Supp. 2d 207, 210 (D.D.C. 2011) (internal quotations omitted) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009). "[E]ven if it strikes a savvy judge that . . . recovery is very remote and unlikely," *Twombly*, 550 U.S. at 556 (internal quotations and citation omitted), a claim is facially plausible when it alleges facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 663.

## <u>SUMMARY OF THE ARGUMENT</u>

First, the District Court erred in dismissing Ms. Blue's claim under 42 U.S.C. § 1983 for a violation of her due process right to bodily integrity. While it "assume[d] without deciding" that Ms. Blue had alleged a due process violation, the District Court held that she had not pled facts showing that a District custom, policy, or practice caused the violation. App. at 35. However, Ms. Blue pled that the District has at least two customs that violated her due process rights: (1) failing to investigate adequately the backgrounds of its teachers before hiring them; and (2) by failing to discipline teachers following misconduct.

A plaintiff can state a valid § 1983 claim by pleading a single decision by a

municipality to hire an employee without adequately investigating his background when scrutiny of the employee's background would lead a reasonable person to conclude that he would commit the type of harm that the plaintiff alleges.  The municipality's conduct in this regard must amount to "deliberate indifference," which occurs when the municipality "knew or should have known of the risk of constitutional violations."  42 U.S.C. § 1983.

Here, Ms. Blue pled, among other things, that Mr. Weismiller was fired from a school district in the past for sexually abusing two female students, and that the District knew or should have known of his history of abuse but that it failed to learn of this history because of its practice of failing to conduct adequate background checks of potential employees.  *See* App. at 12, 18, ¶¶ 23, 61.  These allegations suffice to state a claim for a due process violation of bodily integrity under § 1983.

A plaintiff can also state a § 1983 substantive due process claim by alleging the existence of a harmful municipal practice.  Ms. Blue alleged that the failure to fire or reprimand Mr. Weismiller for his sexual abuse evinces a broader District practice of failing to discipline teachers adequately after learning of misconduct.  These allegations, too, suffice to state a claim under § 1983.

Third, the District Court erred in dismissing Ms. Blue's claim under 20 U.S.C. § 1681, also known as Title IX.  The District Court failed to consider

whether a teacher or other school personnel could be "appropriate person[s]" under the statute if they possessed the requisite authority to remedy misconduct. The District Court also erroneously concluded that the defendants lacked "actual knowledge" of Ms. Blue's injuries, even though she alleged that numerous teachers, personnel, and eventually former Chancellor Rhee knew about them. Moreover, the District Court erred in failing to hold that the District's response to Ms. Blue's situation amounted to "deliberate indifference," given that the District's own investigation revealed evidence of Mr. Weismiller's abuse.

Finally, the District Court erred in dismissing Ms. Blue's state law claims for failure to give notice under D.C. Code § 12-309. District officials had actual notice of Ms. Blue's claims no later than May 2009, when a school investigator completed a detailed report summarizing Ms. Blue's allegations. The report is akin to a police report, explicitly authorized under § 12-309 to provide notice to the District. The District Court erred in finding that such a report could not provide notice, particularly when courts have allowed plaintiffs to supplement police reports with other documents to satisfy the notice requirement.

## ARGUMENT

### A.    The District Court Erred in Dismissing Ms. Blue's Claim Alleging Municipal Liability Pursuant to 42 U.S.C. § 1983

Ms. Blue properly alleged a claim under 42 U.S.C. § 1983 for violation of her substantive due process right to bodily integrity. *See* App. at 21-22, ¶¶ 81-87.

11

As the District Court acknowledged, 42 U.S.C. § 1983 provides a cause of action against

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . . .

42 U.S.C. § 1983 (2006); *see also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978); *Brown*, 514 F.3d at 1282. A municipality (here, the District of Columbia) can be held liable as a "person" under § 1983 when it adopts a custom, policy, or practice that deprives an individual of his or her constitutional rights. *Monell*, 436 U.S. at 690; *Brown*, 514 F.3d at 1283. To state a claim against a municipality under § 1983, a plaintiff must plead: (1) a predicate constitutional violation, such as Ms. Blue's due process claim; and (2) a custom or policy of the municipality that caused the violation. *Baker v. District of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003) (citing *Collins v. City of Harker Heights*, 503 U.S. 115, 124 (1992)); *Warren v. District of Columbia*, 353 F.3d 36, 38 (D.C. Cir. 2004); *Brown*, 514 F.3d. at 1283. A harmful municipal custom or practice can give rise to a § 1983 violation, even if it "has not received formal approval through the [municipality's] official decisionmaking channels." *Monell*, 436 U.S. at 690; *see also Daskalea v. District of Columbia*, 227 F.3d 433, 441-42 (D.C. Cir. 2000).

The Supreme Court has expressly held that a municipality's failure to investigate adequately backgrounds of potential employees before hiring them can constitute a custom or practice that gives rise to § 1983 liability. *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 412 (1997).

In rejecting Ms. Blue's § 1983 claim, the District Court confused what Ms. Blue must plead in her complaint with what she eventually must prove at trial. *See* App. at 36 ("[I]n order to <u>prove</u> that a municipal hiring or training policy violated his rights under § 1983, [a plaintiff] must <u>show</u> . . .") (emphasis added)(citation omitted). Ms. Blue, however, need not "prove" anything at this stage, but need only plead a predicate constitutional violation and a custom or practice by the District that caused the violation. *Baker*, 326 F.3d at 1306; *Warren*, 353 F.3d at 38; *Brown*, 514 F.3d. at 1283. For the reasons discussed below, Ms. Blue has adequately pled a municipal liability claim under § 1983.

1.    <u>The District Court Erred in Dismissing Ms. Blue's § 1983 Claim for Violation of Her Substantive Due Process Right to Bodily Integrity</u>

The District Court did not dispute that Ms. Blue sufficiently alleged a predicate substantive due process claim, only that she had not adequately pled that a District custom or policy caused the violation. App. at 35. Indeed, cases cited by the District Court make clear that sexual abuse by a teacher violates a student's substantive due process right to bodily integrity. *See* App. at 33-34 (citing *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 727 (3d Cir. 1989); *Doe v.*

13

*Taylor Indep. Sch. Dist.*, 15 F.3d 443, 451-52 (5th Cir. 1994); *Kinman v. Omaha Pub. Sch. Dist.*, 171 F.3d 607, 611 (8th Cir. 1999)).

As the District Court acknowledged, some of these cases involved plaintiffs who were minors, but the court in *Doe* held that, "the Fifth Circuit does not distinguish between the age of school children."  App. at 34 (citing *Doe v. Taylor Indep. Sch. Dist*, 15 F.3d at 443).  This Court should follow the Fifth Circuit, particularly in light of Ms. Blue's emotional disturbance disability.  *See* App. at 11, ¶ 13.

With respect to municipal liability, Ms. Blue pled that the District violated her substantive due process right to bodily integrity (1) by failing to investigate adequately the backgrounds of its teachers before hiring them; and (2) by failing to discipline teachers following acts of misconduct.  App. at 21-23, ¶¶ 82-85.  As described more fully below, either one of these allegations suffices to state a § 1983 claim.

a)      *The District's Failure to Investigate Mr. Weismiller's Background*

Ms. Blue alleged a § 1983 municipal liability claim for violation of her substantive due process right to bodily integrity premised on the District's failure to investigate Mr. Weismiller's background before hiring him.  A municipality acts with "deliberate indifference" and thus violates § 1983 when "adequate scrutiny of an applicant's background would lead a reasonable policymaker to conclude that

14

the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right." *Brown*, 520 U.S. at 411. To plead "deliberate indifference" adequately, a plaintiff must allege that the District "knew or should have known of the risk of constitutional violations." *See Baker*, 326 F.3d at 1307; *Warren*, 353 F.3d at 39.

The District Court held that Ms. Blue's allegations regarding the failure to investigate Mr. Weismiller's background were deficient because she allegedly "[did] not identify an official District policy on pre-hiring background checks of DCPS teachers," did not "allege how a District policymaker was deliberately indifferent in adopting such a policy," and did not allege that a "final municipal policymaker" implemented such a policy. App. at 36-37.

At the pleading stage of the litigation, however, Ms. Blue needed only to allege that the District "knew or should have known" that its actions could lead to a violation of her substantive due process right to bodily integrity. *See Baker*, 326 F.3d at 1307; *Warren*, 353 F.3d at 39. Ms. Blue has more than satisfied this standard.

As the District Court acknowledged, Ms. Blue pled that

- "[T]he District, DCPS, and [former DCPS Chancellor Michelle] Rhee 'knew or should have known that Mr. Weismiller had engaged in inappropriate sexual relationships with students in the past.'" App. at 35 (citing App. at 12, 18, ¶¶ 23, 61).

- The District "knew or should have known that Mr. Weismiller had

15

been sued and possibly terminated from prior employment as a result of having inappropriate sexual relationships with students in the past." App. at 18, ¶ 62.

- An adequate investigation of Mr. Weismiller's background should have alerted the District of this abuse. *See* App. at 21, ¶ 82.

- The District hired Mr. Weismiller in spite of his troubled background, and he caused the exact type of injury that an adequate background investigation would have revealed. *See* App. at 18, ¶ 60; *see also Brown*, 520 U.S. at 41.

In short, Ms. Blue "state[d] facts that may reasonably suggest misconduct sufficiently serious and obvious" to justify her claim. *See Atchinson*, 73 F.3d at 422. This is all that is required to state a claim.

The cases cited by the District Court for the notion that Ms. Blue should have alleged additional facts are inapposite. None of these cases involved a motion to dismiss; rather, they all involved motions for summary judgment filed <u>after</u> discovery had occurred. *See Brown*, 520 U.S. at 412 (holding evidence offered by the plaintiff at trial did not suffice to prove municipal liability); *Benavides v. Cnty. of Wilson*, 955 F.2d 968, 970 (5th Cir. 1992) (reviewing appeal of summary judgment decision finding that plaintiff failed to offer evidence showing inadequate employee background checks of jail personnel); *Andrews v. Fowler*, 98 F.3d 1069, 1076 (8th Cir. 1996) (reviewing appeal of summary judgment decision finding that city's hiring and training procedures were sufficient).

16

Thus, Ms. Blue's allegations regarding the District's failure to investigate Mr. Weismiller's background before hiring him state a claim under § 1983. The District Court's dismissal of this claim, therefore, should be reversed.

  b)  *The District's Failure to Fire or Reprimand Mr. Weismiller*

Ms. Blue also alleged a § 1983 municipal liability claim for violation of her substantive due process right to bodily integrity premised on the District's failure to reprimand or terminate Mr. Weismiller. The District Court rejected this argument, finding that because the District did not investigate Mr. Weismiller's misconduct until <u>after</u> his sexual relationship with Ms. Blue ended, the District's actions could not have caused Ms. Blue's injuries. App. at 39. However, as the District Court acknowledged, the District's failure to reprimand or terminate Mr. Weismiller could subject the District to § 1983 liability if it evinces a broader District custom of failing to stop sexual relationships between teachers and students. *See* App. at 40. Allegations of even a single failure by a municipality to reprimand an employee after that employee has injured someone are sufficient, particularly when those allegations plead serious misconduct. *See Grandstaff v. City of Borger, Tex.*, 767 F.2d 161, 171 (5th Cir. 1985) (imposing § 1983 liability on city for single incident of police use of excessive force when "there were no reprimands, no discharges, and no admissions of error" because "[t]his reaction to so gross an abuse of the use of deadly weapons says more about the existing

17

disposition of the City's policymaker than would a dozen incidents . . ."); *see also McRorie v. Shimoda*, 795 F.2d 780, 784 (9th Cir. 1986) (finding that "[p]olicy or custom may be inferred if, <u>after</u> the shakedown, the prison officials took no steps to reprimand or discharge the guards, or if they otherwise failed to admit that the guards' conduct was in error" (emphasis added)); *Owens v. Haas*, 601 F.2d 1242, 1246 (2d Cir. 1979) (allowing case to proceed to discovery when the plaintiff pleaded "an isolated incident").

The District Court cited *Fundiller v. City of Cooper City* for the notion that courts require multiple incidents, or a "persistent" failure to take disciplinary action to impose §1983 municipal liability.  App. at 41.  But while the complaint in *Fundiller* alleged "repeated failures to follow police procedure," there is no mention in the court's discussion of the complaint that it contained facts regarding any incident other than the one in question.  777 F.2d 1436, 1442 (11th Cir. 1985).  Thus, the case is consistent with those holding that allegations of a single incident of misconduct are sufficient under § 1983.

Further, even if the Court were to find that a single act of failing to discipline an employee is insufficient to demonstrate a municipal custom, the Court should allow Ms. Blue to conduct discovery to determine whether any other similar incidents have occurred, particularly <u>after</u> she filed her complaint, of which she could have had no prior knowledge.  In *Henry v. County of Shasta*, the Ninth

Circuit reversed a grant of summary judgment in favor of the municipality upon

reviewing the declarations of two prisoners who were injured by officers at the

same jail <u>after</u> the plaintiff had filed his complaint.  132 F.3d 512, 518-19 (9th Cir.

1997).  The court determined that the plaintiff's lawsuit put the municipality on

notice of the use of excessive force toward prisoners, and the fact that the

municipality neither changed its policies nor disciplined the officers after the event

was evidence of a municipal policy permitting excessive force.  *Id.* at 519.  *See*

*also Larez v. City of Los Angeles*, 946 F.2d 630, 642 (9th Cir. 1991) (finding

statements by police chief made <u>after</u> the injury in question "are probative of

central issues in the case – the [police chief's] reckless and callous indifference,

and customs and policies of the LAPD"); *Grandstaff*, 767 F.2d at 171 (allowing

jury to consider post-injury actions by the city in determining § 1983 liability

because "[t]he disposition of the policymaker may be inferred from his conduct

<u>after</u> the events of that night"); *McRorie*, 795 F.2d at 784 (finding officers' post-

injury conduct relevant to policy in place at the time of injury).

Even if the District Court is correct that such post-event evidence is only

"one leg of a broader analysis" regarding a municipal custom, Ms. Blue should be

permitted the opportunity to collect such evidence.  *See* App. at 41.  Because her

complaint was dismissed <u>before</u> discovery commenced, she had no way of

knowing whether there were any similar allegations against the District for teacher

sexual misconduct, particularly those that may have been made after the filing of her complaint. The procedural posture of Ms. Blue's case makes it different from the cases cited by the District Court, which evaluated whether all of the <u>evidence</u> accumulated by the plaintiff in discovery demonstrated a pattern of failing to discipline employees that could give rise to municipal liability under § 1983. *See* App. at 41 (citing *Henry*, 132 F.3d at 519; *Mejia v. City of Sacramento*, 177 Fed. Appx. 661, 665 (9th Cir. 2006)). Because Ms. Blue has not yet had the opportunity to collect this evidence, it is premature to dismiss her substantive due process claim premised on the District's failure to reprimand or terminate Mr. Weismiller.

**B.     The District Court Erred in Dismissing Ms. Blue's Claim Pursuant to 20 U.S.C. § 1681**

Ms. Blue has adequately pled a claim against the District under 20 U.S.C. § 1681, commonly known as Title IX, premised on the District's failure to do anything about Mr. Weismiller's sexual abuse after hearing about it. *See* App. at 23, ¶¶ 93-97. Title IX provides:

> No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance . . . .

20 U.S.C. § 1681(a) (2006); *see also Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 280 (1998). A teacher's sexual misconduct toward a student constitutes

actionable discrimination under Title IX. *Franklin v. Gwinnett Cnty. Pub. Schs.*, 503 U.S. 60, 75-76 (1992). Title IX is violated when (1) an "appropriate person," defined as "an official of the school district who at a minimum has authority to institute corrective measures;" (2) has "actual knowledge" of the misconduct; but (3) acts with "deliberate indifference" in responding to it. *Gebser*, 524 U.S. at 276-77.

     1.    <u>An "Appropriate Person" Was Aware of Mr. Weismiller's Misconduct</u>

Ms. Blue sufficiently alleged facts establishing that an "appropriate person" had knowledge of Mr. Weismiller's misconduct. An "appropriate person" under Title IX is "an official of the recipient entity with the authority to take corrective action." *Gebser*, 524 U.S. at 290. "Because officials' roles vary among school districts, deciding who exercises substantial control for the purposes of Title IX liability is necessarily a fact-based inquiry." *Murrell v. Sch. Dist. No. 1, Denver, Colo.*, 186 F.3d 1238, 1247-48 (10th Cir. 1999) (stating that, "[a]t this stage in the proceedings we must accept as true the allegation that Ms. Jones's teachers were invested with the authority to halt Mr. Doe's known sexually assaultive behavior"); *see also Plamp v. Mitchell Sch. Dist. No. 17-2*, 565 F.3d 450, 459 (8th Cir. 2009) (holding that teachers and guidance counselors could be "appropriate persons" if the record, after discovery, demonstrates that they had the authority to address the misconduct); *Bostic v. Smyrna Sch. Dist.*, 418 F.3d 355, 360-62 (3d Cir. 2005)

(upholding jury instruction that, besides principals, "[o]ther school officials may be 'appropriate persons,' depending on their power to take corrective action to address the discrimination and institute corrective measures").

The District Court did not address whether a teacher could be an "appropriate person" under Title IX. Instead, the District Court concluded that, because top district officials allegedly did not learn of Ms. Weismiller's sexual relationship with Ms. Blue until the relationship had ended, no "appropriate official" was informed. App. at 47. However, Ms. Blue alleged that two teachers, two classroom aides, and a school psychologist knew of her relationship with Mr. Weismiller as it was occurring. App. at 14-15, ¶¶ 31-36. Whether those individuals are "appropriate officials" under Title IX should not be determined before Ms. Blue has conducted discovery to see if they had the requisite "authority to institute corrective measures" mandated by *Gesber*. *Bostic*, 418 F. 3d at 361.

2.    The District Had Actual Knowledge of Mr. Weismiller's Misconduct

Ms. Blue also has alleged sufficient facts to show that the District had "actual knowledge" of Mr. Weismiller's relationship with her. To satisfy the actual knowledge requirement, a plaintiff need not allege that an appropriate official knew with absolute certainty that sexual misconduct had occurred, but only that the official was aware of "facts sufficiently indicating a substantial danger to a student." *Bostic*, 418 F.3d at 360; *see also Escue v. N. Okla. Coll.*, 450 F.3d 1146,

1154 (10th Cir. 2006); *Dawn L. v. Greater Johnstown Sch. Dist.*, 586 F. Supp. 2d

332, 367 (W.D. Pa. 2008); *Doe ex rel. Doe v. Derby Bd. of Educ.*, 451 F. Supp. 2d

438, 446 (D. Conn. 2006).

    As discussed above, Ms. Blue alleged that two teachers, two classroom

aides, a psychologist, and school personnel who ordered her to take a pregnancy

test knew about the abuse.  App. at 14-15, ¶¶ 29-37.  Contrary to the District

Court's holding, these officials need not have seen Ms. Blue and Mr. Weismiller

engaged in sexual acts to satisfy the "actual knowledge" requirement, because

Ms. Blue pled "facts sufficiently indicating a substantial danger to a student."  *See*

*Bostic*, 418 F.3d at 360.  For these reasons, the District Court erred in holding that

the District lacked actual knowledge of Ms. Blue's injuries.

    3.    The District Acted With Deliberate Indifference by Failing to Address
          Adequately Mr. Weismiller's Misconduct

    A school's response to allegations of sexual misconduct gives rise to Title

IX liability when the response is "clearly unreasonable in light of the known

circumstances."  *Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.*,

526 U.S. 629, 648 (1999); *Doe v. Sch. Bd.*, 604 F.3d 1248, 1259 (11th Cir. 2010);

*Vance v. Spencer Cnty. Pub. Sch. Dist.*, 231 F.3d 253, 260 (6th Cir. 2000).

Whether a particular investigation is "clearly unreasonable" is a fact question not

appropriate for resolution on a motion to dismiss.  *See Doe v. Sch. Bd.*, 604 F.3d at

1259-60.  The mere fact that a school responds in some fashion to allegations of

23

misconduct is insufficient; the school must "take reasonable action in light of those circumstances to eliminate the behavior." *Vance*, 231 F.3d at 261. The reason is that "inconclusive investigations are common, especially when alleged harassment occurs behind closed doors," and thus a "reasonable response" often includes taking actions such as "monitoring and admonishing an accused teacher or student despite the inconclusive nature of the school's investigation." *Doe v. Sch. Bd.*, 604 F.3d at 1262.

Here, Ms. Blue alleged that the District investigated Mr. Weismiller by interviewing several teachers and staff members. App. at 14-15, ¶¶ 29-36. Despite the fact that every person interviewed by the District had seen Mr. Weismiller and Ms. Blue alone together or had heard that they were having a sexual relationship, the District took the investigation no further. App. at 15, ¶ 38. Even after learning that Ms. Blue was pregnant, the District did not order Mr. Weismiller and Ms. Blue to take paternity tests, nor did it discipline Mr. Weismiller in any way. *Id.* Given these allegations, the District Court erred in concluding that, as a matter of law, the District's response to Mr. Weismiller's misconduct failed to demonstrate "deliberate indifference."

**C.    The District Court Erred in Dismissing Ms. Blue's State Law Claims for Failure to Give Timely Notice under D.C. Code § 12-309**

Ms. Blue also brought claims against the District under state law for negligent supervision, negligent hiring/retention, intentional infliction of emotional

distress, and breach of fiduciary duty.  App. at 17-21, ¶¶ 52-80.  As discussed more fully below, the District conducted a detailed investigation of Ms. Blue's allegations within six months of her injury, which gave the District actual notice of her injuries within six months, as required by D.C. Code § 12-309.  App. at 11, 14-15, ¶¶ 12, 29-36.

D.C. Code § 12-309 provides:

> An action may not be maintained against the District of Columbia for unliquidated damages to person or property unless, within six months after the injury or damage was sustained, the claimant, his agent, or attorney has given notice in writing to the Mayor of the District of Columbia of the approximate time, place, cause, and circumstances of the injury or damage.  A report in writing by the Metropolitan Police Department, in regular course of duty, is a sufficient notice under this section.

D.C. Code § 12-309's legislative history shows that the notice requirement was imposed to prevent plaintiffs from filing suit against the District before the District had an opportunity to investigate a claim.  In enacting the statute, Congress expressed concern about cases where the plaintiff suffered an injury but waited years to sue, during which

> "[w]itnesses to the accident had moved and could not be located and the circumstances surrounding the injury had become a matter entirely within the knowledge of the plaintiff. . . .[T]he purpose of the bill is to give the District officials reasonable notice of the accident so that the facts may be ascertained and, if possible, the claim adjusted."

*George v. Dade*, 769 A.2d 760, 765 (D.C. 2001) (citing H.R. Rep. No. 72-2010, at

1-2 (1933)).

Consistent with this purpose, the statute recognizes that "written notice by a

claimant should not be a prerequisite to legal action if, in fact, <u>actual notice</u> in the

form of a police report has been received by the District." *Allen v. District of

Columbia*, 533 A.2d 1259, 1262 (D.C. 1987) (emphasis in original); *Pitts v.

District of Columbia*, 391 A.2d 803, 807 n.4 (D.C. 1978) (citing H.R. Rep. No. 72-

2010, at 1-2 (1933)).

Where a plaintiff uses a police report to satisfy D.C. Code § 12-309, that

report must contain as much detail regarding the "time, place, cause, and

circumstances of the injury or damage" as a written notice to the mayor. *Pitts*, 391

A.2d at 808 (quoting *Jenkins v. District of Columbia*, 379 A.2d 1177, 1178 (D.C.

1977)). When a police report lacks these details, courts have looked to other

documents to determine whether the plaintiff complied with the notice statute.

*Rieser v. District of Columbia*, 563 F.2d 462, 476-77 (D.C. Cir. 1977) (letters from

the Department of Corrections and Parole Board to District officials, along with

police report, satisfied the notice requirement); *Sperling v. Washington Metro.

Area Transit Auth.*("WMATA"), 542 F. Supp. 2d 76 (D.D.C. 2008) (finding police

report and letter written by WMATA together provided statutory notice); *Dellums

v. Powell*, 566 F.2d 216, 230 (D.C. Cir. 1977) ( "[A]lthough we recognize that

notice of a claim of false arrest cannot reasonably be found in a police report alone, we think Special Counsel's assertion of a claim coupled with the police reports gave the District all the notice to which it was lawfully entitled."). *Mazloum v. District of Columbia Metro. Police Dept.*, 522 F. Supp. 2d 24, 49-52 (D.D.C. 2007) (finding written citizen complaint and police report together provided statutory notice). The fact that courts have permitted plaintiffs to supplement police reports when the police reports alone failed to satisfy D.C. Code § 12-309 shows that police reports are not the <u>only</u> acceptable form of notice.

Here, there is no question that the District had actual notice of Ms. Blue's injury within six months, as required by D.C. Code § 12-309. Mr. Weismiller initiated a sexual relationship with Ms. Blue on or about November 19, 2008. App. at 12, ¶ 19. On May 4, 2009, the Division of School Security of DCPS began investigating Mr. Weismiller by interviewing him, Ms. Blue, and seven students, teachers, and staff at Shadd. App. at 14-15, ¶¶ 29-37. The investigation culminated in a 51-page report published by DCPS on August 21, 2009, which was circulated to DCPS's legal department, among other school officials.

This investigative report is far more detailed than § 12-309 contemplates. It documents Ms. Blue's allegations that Mr. Weismiller began flirting with her in September or October of 2008, began having sex with her in November 2008, and had sex with her on a continuing basis until April 27, 2008. It states that these

27

injuries occurred at the Transition Academy at Shadd, 5600 E. Capitol St. SE

Washington, DC 20019, and references allegations of specific sexual encounters in

Mr. Weismiller's classroom.  It includes interview transcripts from teachers and

staff members who said they saw Ms. Blue alone with Mr. Weismiller in his

classroom, with the lights off, and who told him to stay away from Ms. Blue.  The

report further states that Shadd Principal Alonzo Randall, the District of Columbia

Metropolitan Police Department, and the United States Attorneys' Office were all

told about the investigation.

Thus, the District had actual notice of Ms. Blue's injuries no later than May

2009 (less than six months after her relationship with Mr. Weismiller began).  The

District had an opportunity to, and did in fact, conduct a thorough investigation of

Ms. Blue's injuries.  The purpose of D.C. Code § 12-309 has been fully satisfied,

and the District has suffered no prejudice because it had the opportunity to

investigate Ms. Blue's claim fully.  *See Hurd v. District of Columbia*, 106 A.2d

702, 704-05 (D.C. 1954).  Here, as in *Hurd*, "[t]o bar the present suit, despite the

fact that the statutory purpose was satisfied and the District was admittedly not

prejudiced, would be to extend the language of the statute far beyond its clear

purpose." 106 A.2d at 705.  Thus, the Court should hold that Ms. Blue has

complied with D.C. Code § 12-309.

## <u>CONCLUSION</u>

For all the foregoing reasons, Ms. Blue respectfully requests that this Court reverse the District Court's March 8, 2012 decision dismissing her claims.


Dated:  July 12, 2013                    Respectfully submitted,

                                         By:   /s/  Natalie A. Baughman
                                         Natalie A. Baughman, D.C. Bar No. 997075
                                         Scott D. Gilbert, D.C. Bar No. 290932
                                         **GILBERT LLP**
                                         1100 New York Ave. NW, Suite 700
                                         Washington, DC 20005
                                         Telephone:  (202) 772-2200
                                         Facsimile:  (202) 772-3333
                                         baughmann@gotofirm.com
                                         gilberts@gotofirm.com

                                         *Attorneys for Appellant Ayanna Blue*

## STATUTORY ADDENDUM

**42 U.S.C.A. § 1983**

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

**HISTORY:** (R.S. § 1979; Pub.L. 96-170, § 1, Dec. 29, 1979, 93 Stat. 1284; Pub.L. 104-317, Title III, § 309(c), Oct. 19, 1996, 110 Stat. 3853.)

**20 U.S.C. § 1681**

(a) Prohibition against discrimination; exceptions

No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance, except that:

(1) Classes of educational institutions subject to prohibition

in regard to admissions to educational institutions, this section shall apply only to institutions of vocational education, professional education, and graduate higher education, and to public institutions of undergraduate higher education;

(2) Educational institutions commencing planned change in admissions

in regard to admissions to educational institutions, this section shall not apply (A) for one year from June 23, 1972, nor for six years after June 23, 1972, in the case of an educational institution which has begun the process of changing from being an institution which admits only students of one sex to being an institution which admits students of both sexes, but only if it is carrying out a

plan for such a change which is approved by the Secretary of Education or (B) for seven years from the date an educational institution begins the process of changing from being an institution which admits only students of only one sex to being an institution which admits students of both sexes, but only if it is carrying out a plan for such a change which is approved by the Secretary of Education, whichever is the later;

(3) Educational institutions of religious organizations with contrary religious tenets

this section shall not apply to an educational institution which is controlled by a religious organization if the application of this subsection would not be consistent with the religious tenets of such organization;

(4) Educational institutions training individuals for military services or merchant marine

this section shall not apply to an educational institution whose primary purpose is the training of individuals for the military services of the United States, or the merchant marine;

(5) Public educational institutions with traditional and continuing admissions policy

in regard to admissions this section shall not apply to any public institution of undergraduate higher education which is an institution that traditionally and continually from its establishment has had a policy of admitting only students of one sex;

(6) Social fraternities or sororities; voluntary youth service organizations

this section shall not apply to membership practices—

(A) of a social fraternity or social sorority which is exempt from taxation under section 501(a) of Title 26, the active membership of which consists primarily of students in attendance at an institution of higher education, or

(B) of the Young Men's Christian Association, Young Women's Christian Association, Girl Scouts, Boy Scouts, Camp Fire Girls, and voluntary youth service organizations which are so exempt, the membership of which has traditionally been limited to persons of one sex and principally to persons of

less than nineteen years of age;

(7) Boy or Girl conferences

this section shall not apply to—

> (A) any program or activity of the American Legion undertaken in connection with the organization or operation of any Boys State conference, Boys Nation conference, Girls State conference, or Girls Nation conference; or

> (B) any program or activity of any secondary school or educational institution

> specifically for—

>> (i) the promotion of any Boys State conference, Boys Nation conference, Girls State conference, or Girls Nation conference; or

>> (ii) the selection of students to attend any such conference;

(8) Father-son or mother-daughter activities at educational institutions

this section shall not preclude father-son or mother-daughter activities at an educational institution, but if such activities are provided for students of one sex, opportunities for reasonably comparable activities shall be provided for students of the other sex; and

(9) Institution of higher education scholarship awards in "beauty" pageants

this section shall not apply with respect to any scholarship or other financial assistance awarded by an institution of higher education to any individual because such individual has received such award in any pageant in which the attainment of such award is based upon a combination of factors related to the personal appearance, poise, and talent of such individual and in which participation is limited to individuals of one sex only, so long as such pageant is in compliance with other nondiscrimination provisions of Federal law.

(b) Preferential or disparate treatment because of imbalance in participation or receipt of Federal benefits; statistical evidence of imbalance

Nothing contained in subsection (a) of this section shall be interpreted to require any educational institution to grant preferential or disparate treatment to the members of one sex on account of an imbalance which may exist with respect to the total number or percentage of persons of that sex participating in or receiving the benefits of any federally supported program or activity, in comparison with the total number or percentage of persons of that sex in any community, State, section, or other area: *Provided,* That this subsection shall not be construed to prevent the consideration in any hearing or proceeding under this chapter of statistical evidence tending to show that such an imbalance exists with respect to the participation in, or receipt of the benefits of, any such program or activity by the members of one sex.

(c) "Educational institution" defined

For purposes of this chapter an educational institution means any public or private preschool, elementary, or secondary school, or any institution of vocational, professional, or higher education, except that in the case of an educational institution composed of more than one school, college, or department which are administratively separate units, such term means each such school, college, or department.

**HISTORY:** (Pub. L. 92-318, Title IX, § 901, June 23, 1972, 86 Stat. 373; Pub. L. 93-568, § 3(a), Dec. 31, 1974, 88 Stat. 1862; Pub. L. 94-482, Title IV, § 412(a), Oct. 12, 1976, 90 Stat. 2234; Pub. L. 96-88, Title III, § 301(a)(1), Title V, § 507, Oct. 17, 1979, 93 Stat. 677, 692; Pub.L. 99-514, § 2, Oct. 22, 1986, 100 Stat. 2095.)

**D.C. Code § 12-309**

An action may not be maintained against the District of Columbia for unliquidated damages to person or property unless, within six months after the injury or damage was sustained, the claimant, his agent, or attorney has given notice in writing to the Mayor of the District of Columbia of the approximate time, place, cause, and circumstances of the injury or damage. A report in writing by the Metropolitan Police Department, in regular course of duty, is a sufficient notice under this section.

**HISTORY:** (Dec. 23, 1963, 77 Stat. 511, Pub. L. 88-241, § 1; July 29, 1970, 84 Stat. 551, Pub. L. 91-358, title I, § 141(2); Apr. 30, 1988, D.C. Law 7-104, § 2(b), 35 DCR 147.)

## <u>CERTIFICATE OF SERVICE</u>

I certify that on July 12, 2013, I caused eight copies of the foregoing Brief of Appellant Ayanna Blue to be filed with the clerk of this Court by hand delivery, and I electronically filed the original through this Court's CM/ECF system, which will send a notice of filing to all registered users.

/s/  Natalie A. Baughman
Natalie A. Baughman, D.C. Bar No. 997075